IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

BRAND TATE,                          :
                                     :
        Plaintiff,                   :
                                     :
vs.                                  :
                                     :      CIVIL ACTION 15-0139-M
CAROLYN W. COLVIN,                   :
Social Security Commissioner,        :
                                     :
        Defendant.                   :


MEMORANDUM OPINION AND ORDER


In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19).  Oral argument was waived in this action (Doc. 20).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-six years old, had completed a high school education (Tr. 200), and had previous work experience as a garbage collection driver and embroidery machine operator (Tr. 217).  Plaintiff alleges disability due to chronic back pain with a bulging disc at L5-S1, chronic neck pain, bilateral shoulder pain, hypertension, obesity, major depressive disorder, severe with psychosis, anxiety, right knee pain, obstructive sleep apnea, and bilateral carpal tunnel syndrome (Doc. 13).

The Plaintiff applied for disability benefits and SSI on May 7, 2012, asserting disability as of April 28, 2012 (Tr. 250; 335-44).  An Administrative Law Judge (ALJ) denied benefits, determining that although she could not perform her past relevant work, Tate could perform specified sedentary work (Tr. 250-67).  Plaintiff requested review of the hearing decision (Tr. 188-90), but the Appeals Council denied it (Tr. 24-29).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Tate alleges that:  (1) The ALJ's residual functional capacity (hereinafter *RFC*) determination is unsupported by the evidence; and (2) the Appeals Council did not properly review newly-submitted evidence (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  A summary of the relevant record evidence follows.[1]

On February 1, 2012, Dr. Alex K. Curtis examined Plaintiff for an upper respiratory infection and hypertension; she was in no acute distress and did not appear uncomfortable (Tr. 463-66; *see generally* Tr. 455-73).  Her weight was 208 pounds with a Body Mass Index (hereinafter *BMI*) of 33.6, making her moderately obese.[2]

On March 6, 2012, Dr. Bryan S. Givhan, a Neurological Surgeon, examined Tate for back and neck injuries caused by a motor vehicle accident three months earlier (Tr. 477-78; *see generally* Tr. 475-94).  Cervical and thoracic spine MRI's were normal, but the lumbar scan showed a mild bulging disc at L5-S1; she had had physical therapy (hereinafter *PT*) and been released back to work, left that job because of pain, and found light work elsewhere.  Givhan noted neck pain, radiating to the right

---

[1] The Court finds it unnecessary to summarize medical evidence pre-dating Tate's asserted onset date of April 28, 2012 by a long period.  Likewise, evidence not relating to the claims raised herein will go unreported.

[2] http://www.bestbmicalculator.com/33.6/

3

shoulder area, but not into the low back; it was not associated with weakness or numbness in Tate's arms or legs.  Motor exam was 5/5 in all muscle groups; she had normal station and gate. Plaintiff had full range of motion (hereinafter *ROM*) in her neck with no praraspinal spasm but complaints of pain.  The Doctor offered more PT and limited her to thirty-pound floor-to-waist and waist-to-shoulder lifting; Plaintiff was to continue taking Ibuprofen and Tramadol[3] along with Neurontin[4] and Baclofen.[5] The Therapist noted that Tate rated her average pain as five on a ten-point scale and stated it radiated into her thoracic spine, interfering with sleep (Tr. 488-93).  The Therapist noted PT had improved her cervical ROM and strength to within normal limits over a two-week period though she was still experiencing pain in her lower back (Tr. 482).  On March 27, 2012, Dr. Givhan could not explain why Plaintiff was experiencing her worsening pain; he recommended that she return to work.  The Doctor would not provide "any long term impairment or other treatment for her chronic pain syndrome" (Tr. 476).

On April 12, 2012, Tate complained of neck pain and

---

[3]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

[4]**Error! Main Document Only.***Neurontin* is used in the treatment of partial seizures.  *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[5]Baclofen is a muscle relaxer used in treating muscle symptoms caused by multiple sclerosis, including spasm, pain, and stiffness. *See* http://www.drugs.com/baclofen.html

stiffness, back, tailbone, and right shoulder pain, and joint pain in the knees, elbows, hands, and wrists (Tr. 455-57).  Dr. Curtis noted tenderness on palpation in the cervical and thoracolumbar spine and diagnosed lumbago.

On April 19, 2012, at Tate's request, Dr. Givhan ordered a cervical epidural block (Tr. 475).  At an examination by Dr. Wesley L. Spruill at the SpineCare Center eleven days later, Plaintiff rated her pain as averaging three and at four at its most intense; she had no complaints of tingling, numbness, or weakness (Tr. 503; *see generally* 501-08).  Spruill gave her the block.

On May 11, 2012, Plaintiff went to Physicians Care of Thomasville complaining of back pain, radiating from her upper back down into the lower back; she reported that an epidural had helped for only a week and that Dr. Curtis had prescribed her Lortab[6] (Tr. 513-14).  Tate complained of no other pain and no numbness in the legs; though she appeared uncomfortable, she was in no acute distress.  Plaintiff had back tenderness and muscle spasm; straight-leg raising was limited by stiffness bilaterally.  The exam was normal otherwise; Flexeril[7] and

---

[6]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[7]**Error! Main Document Only.***Flexeril* is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-

Celebrex[8] were prescribed.

On May 22, 2012, Dr. Judy Travis examined Tate who complained of knee, back, and neck pain for which she was prescribed Lortab and Celebrex; Plaintiff saw the Doctor four more times through August 3 for prescription refills (Tr. 610-12).

On September 17, Dr. Lee Loftin, at Tuscaloosa Ear Nose and Throat, examined Tate for complaints of daily throat burning and discomfort, lasting all day; her previous medications included Demerol[9] (Tr. 601-07).  Several months earlier, Plaintiff had begun experiencing sinus problems and sleep apnea every night of moderate difficulty, causing headaches, sleepiness and fatigue; she weighed 210 pounds with a BMI of 36.18, making her morbidly obese.[10]  Lofton noted no abnormalities in Tate's eyes, head and face, eyes, ears, hearing, neck, extremities, or her lymphatic, neurologic, pulmonary, or cardiovascular systems; she was oriented in three spheres with no depression, anxiety, or agitation.  The Doctor found a deviated nasal septum, turbinate hypertrophy, obstructive sleep apnea, and tonsillitis; he

---

57 (48th ed. 1994).

[8]**Error! Main Document Only.**Celebrex is used to relieve the signs and symptoms of osteo-arthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults.  Physician's Desk Reference 2585-89 (58th ed. 2004).

[9]**Error! Main Document Only.**Demerol is a narcotic analgesic used for the relief of moderate to severe pain.  Physician's Desk Reference 2570-72 (52nd ed. 1998).

[10] http://www.bestbmicalculator.com/obesity/

encouraged her to quit smoking.  On October 29, Tate underwent a polysomnogram that indicated obstructive sleep apnea (Tr. 608).

On November 9, 2012, West Alabama Mental Health records report Tate's complaints of severe, chronic anxiety and depression with moderately auditory and visual hallucinations; her appearance, psychomotor activity, speech, mood, impulse control, thought process and content, and appetite were within normal limits (Tr. 591-99).  Plaintiff denied suicidal or violent thoughts; Dr. Anne Srilata diagnosed her to have recurrent, severe, major depressive disorder with psychotic features.  On December 4, Tate reported being unable to relax as well as increased anxiety, restlessness, and paranoid ideation (Tr. 589-90); on January 7 and February 15, 2013, she reported minimal progress in her treatment plan (Tr. 585-88).

On January 17, 2013, Dr. Kevin D. Thompson, with the University Orthopaedic Clinic & Spine Center, examined Plaintiff for complaints of right knee stiffness and pain that she rated as five on a ten-point scale (Tr. 614-19).[11]  Thompson found Tate in no apparent distress, oriented in three spheres, with normal motor, reflexes and sensory response; her gait was normal.  The Doctor's impression was right joint pain, right deranged post medial meniscus, right old anterior cruciate ligament (non-

_____

[11]The Court notes this evidence was submitted to and admitted by the Appeals Council but was not considered by the ALJ (Tr. 28, 271).

traumatic), and right medical cruciate ligament.  On January 25,
2013, Plaintiff underwent, among other things, right knee ACL
reconstruction and medial meniscal repair surgery (Tr. 633-37).
On February 7, following surgery, Tate rated her pain as three-
to-four of ten and denied neurological complaints; she could
perform a straight leg raise and had ROM of zero-to-ninety
degrees with no calf swelling or tenderness (Tr. 620-21).  On
March 7, Plaintiff's pain was down to two-to-three; she was
doing well, without complaints (Tr. 622-23).  On April 18, Tate
was feeling better with her pain rated as one-to-two; she had
had no instability or swelling (Tr. 624-25).  She had full ROM
and full strength.  On May 30, Plaintiff's right knee pain was
rated as one; she was released to engage in activities as
tolerated, but Thompson stressed that she needed to continue
doing strength, endurance, and agility training for at least a
year (Tr. 626-27).

From March 13 through May 29, 2013, Tate underwent physical
therapy, at Bryan W. Whitfield Hospital, achieving full ROM in
her lower extremities (Tr. 534-78).

On April 5, 2013, records from West Alabama Mental Health
report that Plaintiff was doing better with her depression and
anxiety management; her thoughts were within normal limits, her

judgment was adequate, but her insight was poor (Tr. 674-75).[12]
A month later, only minimal progress was made; she reported pain
and insomnia (Tr. 672-73).  On July 2, 2013, moderate progress
was made on her treatment plan goals though she reported
increased visual hallucinations and staying awake to avoid them
(Tr. 665-70).  On July 26, there was moderate progress in all
phases of Tate's treatment plan goals; judgment and insight were
considered adequate (Tr. 663-64).  On August 23, there was only
minimal progress; Plaintiff complained that she was not getting
enough sleep and that her family did not give her enough space
(Tr. 656-61).  On September 27, the Psychiatrist noted Tate's
depression of one year and various drug treatments (Tr. 650-
54).[13]

On May 6, 2013, Dr. Arturo Otero performed a nerve
conduction test that revealed the following:  (1) right median
nerve entrapment neuropathy at the carpal tunnel area and
sensory and motor involvement; and (2) mild to moderate left
median nerve entrapment neuropathy at the carpal tunnel area
with sensory involvement only (Tr. 580-83).  The bilateral upper
extremities were otherwise normal.

On May 20, Dr. Stephen J. Robidoux examined Tate who was

---

[12]The Court notes this evidence was submitted to and admitted by
the Appeals Council but was not considered by the ALJ (Tr. 28, 271).
[13]The Court notes, frankly, that these notes are indecipherable;
however, Tate references them nowhere in her brief (see Doc. 14).

taking Lortab, Indocin,[14] Zoloft,[15] Lorazepam,[16] and sleep apnea
and hypertension medications (Tr. 527-32).  The Doctor noted
repeatedly that Tate was vague about her medical and social
history but he reviewed that which had been provided by the
Social Security Administration.  Robidoux noted she weighed 208
pounds, standing five foot, four; she was in no acute distress
and had normal, unaided gait though she used a cane and back
brace—neither prescribed.  Tate's neck was supple with full ROM
with no muscle spasm or tenderness; ROM was normal in her back
and in all extremities with no tenderness.  The Doctor noted
assertions of inability to stand a particular way, though she
did so without discomfort during other parts of the examination;
he found her neck and knee both normal.  Robidoux noted that
there were no limitations in sitting, standing, walking,
carrying, handling objects, using hand and/or foot controls,
talking, listening, travel, or driving (Tr. 532).  The Doctor
completed a physical capacities evaluation (hereinafter *PCE*)

---

[14]**Error! Main Document Only.***Indocin* is a non-steroidal drug found to
be effective in the treatment of moderate to severe rheumatoid
arthritis, moderate to severe ankylosing spondylitis, moderate to
severe osteoarthritis, acute painful shoulder (bursitis and/or
tendinitis), and acute gouty arthritis.  *Physician's Desk Reference*
1676 (52nd ed. 1998).

[15]**Error! Main Document Only.***Zoloft* is "indicated for the treatment of
depression."  *Physician's Desk Reference* 2229-34 (52nd ed. 1998).

[16]**Error! Main Document Only.**"*Ativan* (lorazepam) is indicated for the
management of anxiety disorders or for the short-term relief of the
symptoms of anxiety or anxiety associated with depressive symptoms."
Its use is not recommended "in patients with a primary depressive
disorder or psychosis."  *Physician's Desk Reference* 2516-17 (48th ed.
1994).

indicating that she could lift and carry up to twenty pounds continuously; she could sit eight hours at a time and walk or stand four hours at a time and seven hours out of an eight-hour day (Tr. 521-26).  Tate could continuously reach, handle, finger, feel, push/pull, balance, and use foot controls bilaterally; Robidoux gave no opinion on her ability to climb stairs, ramps, ladders, or scaffolds, stoop, kneel, crouch, or crawl because of recent knee surgery.  Tate had no environmental work limitations; the Doctor only limited her from squatting, again because of her knee, but indicated that it was only temporary.

On June 5, 2013, Dr. Travis treated Plaintiff for a headache and sinus issues (Tr. 677-80).[17]  On September 6, Tate complained of low back, left shoulder, and right knee pain; Travis noted that she was in no acute distress and had full ROM throughout except for her left shoulder/arm with no muscle atrophy or tenderness for which she was given an injection (Tr. 681-84).  On September 18, Plaintiff appeared for a headache (Tr. 685-87).  On September 30, Tate was seen in a follow up examination for lab work; no complaints were registered (Tr. 688-89).

This concludes the relevant evidence of record.

---

[17]The Court notes this evidence was submitted to and admitted by the Appeals Council but was not considered by the ALJ (Tr. 28, 271).

In bringing this action, Tate first claims that the ALJ's RFC determination is unsupported by the evidence (Doc. 14, pp. 2-5).  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2013).  That decision can not be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

The ALJ's RFC determination was as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a)[18] and 416.967(a) with the exceptions noted herein:  The claimant can occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds.  The claimant can stand and/or walk at least 2 hours in an 8-hour workday and must periodically alternate sitting and standing to relieve pain or discomfort.  The claimant can frequently use her left upper extremity for pushing and/or pulling.  The claimant can occasionally climb ramps and stairs.  The claimant cannot climb ladders, ropes or scaffolds.  The claimant can frequently balance, occasionally stoop and crouch.  The claimant

---

[18]**Error! Main Document Only.**"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2014).

cannot kneel or crawl.  The claimant can
frequently reach in all directions including
overhead.  The claimant can frequently use
her left upper extremity for handling and
fingering.  The claimant should avoid
concentrated exposure to extreme cold,
extreme heat, wetness, humidity, vibration,
fumes, odors, dust, gases and poor
ventilation.  The claimant should avoid all
exposure to hazardous machinery and
unprotected heights.  The claimant can
interact appropriately with supervisors but
this should be casual and non-confrontatio-
nal.  The claimant can interact appropriate-
ly with co-workers but this should be casual
and non-confrontational.  The claimant can
interact appropriately to customers/general
public but this should be casual and non-
confrontational.  The claimant can respond
appropriately to work pressures in a usual
work setting.  The claimant can respond
appropriately to changes in a routine work
setting but changes should be infrequent and
gradually introduced.  The claimant can use
judgment in simple one and two-step work
related decisions.  The claimant can
occasionally use judgment in detailed or
complex work related decisions.  The
claimant can understand, remember and carry
out simple one and two-step instructions.
The claimant can occasionally understand,
remember and carry out detailed or complex
instructions.

(Tr. 255).

     With regard to her RFC claim, Tate asserts that the ALJ did

not properly consider the combined effects of all of her

impairments (Doc. 14, p. 3).  It is true that "the Secretary

shall consider the combined effect of all of the individual's

impairments without regard to whether any such impairment, if

considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(C).  The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, he lists Plaintiff's impairments and concludes by saying that she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Regulations No. 4" (Tr. 253).  This language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").  Though this generally ends the discussion of Tate's claim regarding the combination of her impairments, the Court will continue with Tate's more specific assertions.

Plaintiff goes on to assert that the ALJ did not consider

problems with anxiety, her right upper extremity, and her morbid obesity in determining her RFC (Doc. 14, pp. 3-6).  The evidence shows that Dr. Otero, after conducting nerve conduction tests, found right median entrapment neuropathy at the carpal tunnel area, sensory and motor involvement (Tr. 580).  Though Plaintiff asserts that the ALJ's decision is silent as to this finding, the RFC clearly found that Tate "can frequently use her left upper extremity for handling and fingering" (Tr. 255).  By not finding that Tate could use her right arm for the same behavior, he demonstrated his consideration of the impairment.  This consideration is also manifest in his questioning of the vocational expert (Tr. 218) ("Manipulative limitations, reaching to include overhead, frequent bilateral, handling, fingering left only").

Plaintiff also asserts that the ALJ failed to consider her asthma, citing a single reference to chronic anxiety in medical records provided by West Alabama Mental Health on November 9, 2012 (Doc. 14, p. 4; *see* Tr. 591).  The Court notes, though, that the reference cited was self-reported by Plaintiff to the medical source; the Court finds no corresponding diagnosis by that source (*see* Tr. 597-98).  The Court further notes that other medical evidence, within a close range of time, shows no finding of anxiety (*see* Tr. 610-12 (no mention of anxiety on May 22, 2012); Tr. 605 ("no depression, no anxiety, no agitation" on

15

September 17, 2012); and Tr. 527-32 (though Tate asserts anxiety, no diagnosis regarding it was made on May 20, 2013)).

In spite of Plaintiff's failure to point to medical evidence supporting a diagnosis of anxiety, the Court notes that the ALJ included the following restrictions in his RFC determination:

> The claimant can interact appropriately with supervisors but this should be casual and non-confrontational.  The claimant can interact appropriately with co-workers but this should be casual and non-confrontational.  The claimant can interact appropriately to customers/general public but this should be casual and non-confrontational. The claimant can respond appropriately to work pressures in a usual work setting.  The claimant can respond appropriately to changes in a routine work setting but changes should be infrequent and gradually introduced.  The claimant can use judgment in simple one and two-step work related decisions.  The claimant can occasionally use judgment in detailed or complex work related decisions.  The claimant can understand, remember and carry out simple one and two-step instructions.  The claimant can occasionally understand, remember and carry out detailed or complex instructions.

(Tr. 255).  These limitations clearly indicate an accommodation to Tate's assertions of anxiety.

Plaintiff also asserts that the ALJ failed to consider her morbid obesity in his RFC assessment (Doc. 14, pp. 5-6).  The record shows that the ALJ specifically addressed her obesity,

16

citing Social Security Ruling 02-1p, in finding that "the composite available medical evidence of record does not reveal that this impairment has otherwise reduced the functional limitations and restrictions" (Tr. 262).  In spite of her assertion, Tate does not cite any medical opinion suggesting that her obesity limits her in any way.  The Court notes that the fact of Plaintiff's obesity is insufficient, in and of itself, to demonstrate any restrictions attributable thereto.

The Court has considered Tate's various assertions related to her claim that the ALJ's RFC is not supported by the evidence, but finds no merit in any of them.

Plaintiff's final claim is that the Appeals Council did not properly review newly-submitted evidence (Doc. 14, pp. 6-7). The evidence shows that Tate submitted 183 pages of new evidence to the Appeals Council (Tr. Index 1); while some of it was admitted for consideration (*see* Tr. 28), the bulk of it was denied as providing no basis for changing the ALJ's decision (Tr. 25).  The Court will review only that evidence specifically cited by Plaintiff in her brief.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the

administrative record that goes to the district court for review
when the Appeals Council accepts the case for review as well as
when the Council denies review." *Keeton v. Department of Health
and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under
*Ingram v. Commissioner of Social Security Administration*, 496
F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed
to consider, if such a claim is made, whether the Appeals
Council properly considered the newly-submitted evidence in
light of the ALJ's decision.  To make that determination, the
Court considers whether the claimant "establish[ed] that:  (1)
there is new, noncumulative evidence; (2) the evidence is
'material,' that is, relevant and probative so that there is a
reasonable possibility that it would change the administrative
result, and (3) there is good cause for the failure to submit
the evidence at the administrative level." *Caulder v. Bowen*,
791 F.2d 872, 877 (11th Cir. 1986).

Tate first points to a clinical assessment of pain and a
physical medical source statement, both dated October 27, 2014,
completed by Dr. Travis, her treating physician (Tr. 62-66).
The Appeals Council rejected both forms, finding that they, as
they were completed more than one year after the ALJ's decision,
came too late (Tr. 25).  Plaintiff argues that the Doctor had
indicated that the information provided regarding Tate's
abilities had been in effect for over a year (Doc. 14, p. 7; *cf.*

Tr. 66).  While Plaintiff's argument is correct as to the physical abilities form, no such assertion is made in the pain form; therefore, it will not be considered herein as the Court finds it irrelevant to the period of time under consideration.

In the medical source statement, Travis said that Plaintiff could sit for one hour, and stand and walk, each, for ten minutes at a time; she could sit for four hours and stand and walk, each, for one hour during an eight-hour day (Tr. 64-66). Tate could frequently lift and carry up to ten pounds and twenty-five pounds occasionally.  Plaintiff could use her hands for simple grasping continuously, pushing and pulling of arm controls occasionally, and fine manipulation frequently; she could use her feet for foot controls occasionally.  Travis indicated that Plaintiff was able to stoop, crouch, kneel, crawl, climb, and balance occasionally, but could continuously reach overhead.

In comparing Dr. Travis's proposed limitations for Tate with the ALJ's RFC determination, the Court finds little substantive difference.  They both agreed that she could stand and walk, each, for one hour a workday; while the Doctor limited Plaintiff to sitting for only four hours, the ALJ determined that six hours was the correct amount.  Although Travis found Plaintiff able to balance only occasionally, the ALJ indicated this ability could be performed frequently.

The Court finds no error in rejecting Travis's submitted physical abilities form, noting that her medical records provide no support for any of her conclusions as her medical records provide no evidence of such limitations (*see* Tr. 610-12, 677-80).  Furthermore, the reports of Drs. Givhan (Tr. 475-94), Thompson (Tr. 614-44), and Robidoux (Tr. 527-32) fully support the ALJ's RFC determination.

Tate has also argued that the Appeals Council improperly rejected the evidence submitted by Dr. Thompson at the University Orthopedic Clinic from November 21, 2013 as it rebuts assumptions made by Dr. Robidoux and adopted by the ALJ (Doc. 14, p. 7; *cf.* Tr. 163-66).  The Court notes that, in that report, Dr. Thompson noted Plaintiff was doing well overall, had no complaints of instability, but did have complaints of constant, dull left knee pain (Tr. 163).  However, the record indicates that Tate's previous complaints involved her right knee—not the left one being discussed in these records; in fact, the Court found no evidence of left knee problems in the record before this note.  In any event, x-rays showed "very mild degenerative changes" (Tr. 165); the exam demonstrated normal, painful, active ROM.  The Court finds substantial support for the Appeals Council's decision that this evidence would not have changed the ALJ's decision.  Plaintiff's claim otherwise is without merit.

Tate has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 27th day of August, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE